VICENTE SOLTERO, JR., peticionario y apelante, *v.* IGNACIO ROCA BACÓ y CARLOS BECERRA, ALCALDE y TESORERO-DIRECTOR ESCOLAR, respectivamente, del Municipio de Yauco y MUNICIPIO DE YAUCO, P. R., recurridos y apelados.

Núm. 7185.—*Sometido:* Enero 13, 1937. *Resuelto:* Abril 9, 1937.

---

* NOTA: Véase el prefacio.

*Rafael Soltero Peralta,* abogado del apelante; *Agustín E. Font,* abogado de los apelados.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Se trata de un caso de *injunction.* El primer documento que figura en el récord es la solicitud enmendada que lleva fecha agosto 10, 1934. No consta cuándo se archivó la solicitud original. Sigue la orden para mostrar causa dictada por la corte en julio 11, 1934. Luego el mandamiento de entredicho librado por el secretario el mismo día. No consta cómo ni cuándo se cumplimentó. Fechados en agosto 8, 1934, y notificados el diez, siguen tres escritos del demandado, a saber: moción eliminatoria, excepciones previas y contestación. Luego la relación del caso y opinión y la sentencia de la corte, el escrito de apelación y la certificación de autenticidad.

Tal el legajo de la sentencia. La exposición del caso comienza haciendo constar que el juicio se señaló para agosto 8, 1934, y se pospuso para el diez, que "al empezar la vista,

los demandados solicitaron se dejara sin efecto la anotación de rebeldía, a lo cual accedió la corte, usando de su discreción'', que los demandados archivaron entonces sus alegaciones y habiendo anunciado las partes que estaban listas, se entró a juicio. Se describe la evidencia presentada, como consistente, la del demandante en carta de junio 23, 1934, del Tesorero demandado al plomero del municipio ordenándole cortar el agua a la casa del demandante, cinco recibos por consumo de agua, carta del Tesorero al demandante de 5 de julio 1934, contestando una del demandante y enviando a éste una forma de solicitud impresa para acometida al acueducto con compromiso de cumplir las ordenanzas municipales sobre el particular, el impreso, certificación del Secretario de la Comisión de Servicio Público de julio 20, 1934, haciendo constar que la tarifa de agua de Yauco no ha sido aprobada por la Comisión, artículo 6 del reglamento de sanidad núm. 14, certificado médico creditivo de que el demandante padece de lesiones valvulares del corazón, copia ordenanza municipio fijando tarifa acueducto aprobada en 1912, y declaraciones del demandante y de Félix González y Carlos Becerra, y la de los demandados en los testimonios de Francisco Antongiorgi e Ignacio Roca Bacó.

En su relación del caso y opinión el juez sentenciador hizo constar que

''. . . . Ambas partes estipularon someter con la misma evidencia presentada para el *injunction* preliminar, el *injunction* perpetuo; de manera que la Corte pudiera resolver al mismo tiempo el caso en sus méritos. Tal estipulación fué aprobada por la Corte.''

Seguidamente declaró probados los siguientes hechos:

''El demandante, Vicente Soltero Jr., es propietario y residente del Municipio de Yauco y consumidor de agua del acueducto del referido municipio.

''En 23 de junio de 1934 le fué cortado el servicio de agua de la casa residencia del demandante, por orden del Tesorero del Municipio, o sea del demandado Carlos Becerra.

"El recaudador auxiliar de contribuciones del Municipio, Francisco Antongiorgi, en varias ocasiones, cada trimestre, le cobraba al demandante Soltero el importe del agua y éste no lo pagaba, y por esa razón fué que se le privó de recibir agua del acueducto de Yauco.

"El demandante presentó en evidencia una copia certificada de una ordenanza 'fijando la tarifa de precios de las aguas del acueducto de Yauco', para el año de 1912 a 1913 y para los siguientes, cuyas secciones 13 y 17 leen como sigue:

" 'Sección 13 a.—El pago del abono se hará por trimestres adelantados, durante la primera quincena de los meses de julio, octubre, enero y abril de cada año; pero los concesionarios pagarán completo el mes en que hagan las instalaciones, cualquiera que sea el día en que aquéllas se verifiquen, y los que faltan hasta la terminación del respectivo trimestre.'

" 'Sección 17 a.—La falta de exactitud en los pagos, lleva consigo la suspensión del servicio sin previo aviso, y si el retrazo se prolonga más de quince días, se quitará la comunicación de la cañería particular con la pública, sellándola.'

"El demandante no ha presentado en evidencia la ordenanza de agua que alega está en vigor en Yauco desde el año 1924, y la Corte, por consiguiente no ha podido conocer el contenido de la misma.

"Pero de la declaración del recaudador auxiliar Francisco Antongiorgi, la Corte infiere que las secciones 13 y 17 antes transcritas están en vigor y que el agua debe pagarse por trimestres adelantados.

"Aparece probado que el demandante Soltero pagó, sin protesta, la suma de $12.00 anuales por consumo de agua, en las siguientes fechas: julio 4 de 1931, julio 1°. de 1932, y junio 30 de 1933, según se comprueba con los recibos que presentó en evidencia el propio demandante.

"El primer recibo de agua pagada por el demandante bajo protesta fué el recibo pagado en 5 (sic) de julio de 1934 (admtido en evidencia y presentado también por el demandante).

"El mencionado recibo correspondiente (sic) al año económico de 1933 a 1934, que empezó en primero de julio de 1933 y terminó en 30 de junio de 1934.

"La anualidad que comprende dicho recibo ya estaba vencida con exceso el día 23 de junio de 1934 (día en que le fué cortado el servicio de agua al demandante), si el servicio de agua debía pagarse por trimestres adelantados.

"El demandante pagó por primera vez bajo protesta en 5 (*sic*) de julio de 1934; es decir, después que se le había cortado el suministro de agua.

"Hay otro recibo posterior pagado bajo protesta en 10 de agosto de 1934, que corresponde al primer trimestre del año económico de 1934 a 1935 . . . .

"Aparece claramente probado que el demandante Soltero pagó sin protesta durante varios años consecutivos el impuesto de agua ($12.00 por año) de acuerdo con la tarifa que él ahora alega (hecho sexto de la demanda) que es ilegal, por no haber sido aprobada dicha tarifa por la Comisión de Servicio Público."

Y basándose en ellos llegó a las siguientes conclusiones:

"Al hacer el demandante dichos pagos sin protesta de ninguna clase, aceptó *ipso facto* la validez de la referida tarifa, y por consiguiente, la validez de la ordenanza relativa al acueducto que ahora trata de impugnar.

"    .        .      .      .      .      .      .      .      .

"Y como la acción de *injunction* perpetuo y la solicitud de *injunction* preliminar presentadas por el demandante tienen como fundamento la alegación de que la ordenanza de Acueducto de Yauco es ilegal, y estando, como está, el demandante impedido (*estopped*) de impugnar la ordenanza que él con sus propios actos repetidos año tras año aceptó como válida, la Corte llega a la conclusión de que debe declararse sin lugar en todas sus partes la demanda de *injunction* perpetuo y asimismo sin lugar la solicitud de *injunction* preliminar. Todo ello, sin especial condenación de costas."

No conforme el demandante interpuso el presente recurso de apelación imputando a la Corte de Distrito la comisión de siete errores.

Por el primero sostiene que la corte erró al abrir la rebeldía. Todo lo que consta en los autos sobre este extremo es lo que hemos consignado, esto es, que la corte en el ejercicio de su discreción y a solicitud de los demandados dejó sin efecto la anotación de su rebeldía. No aparece que el demandante tomara excepción, ni siquiera que se opusiera. No consta cuándo, ni cómo ni por qué se hizo la anotación. Bajo esas condiciones, ¿qué base existe para sostener que la corte abusó de su discreción?

Sin hacer cita alguna de ley o de jurisprudencia sostiene el apelante que la moción sobre apertura debió presentarse por escrito a fin de que la corte pudiera actuar válidamente. Convenimos en que hubiera sido mejor práctica la de presentar por escrito una moción de la naturaleza de la que aquí se trata, pero el hecho de que se hiciera y resolviera oralmente, bajo las circunstancias que concurren, no puede servir de base para la revocación de la sentencia.

Los errores segundo y tercero se refieren a la apreciación de la prueba. La corte como sabemos concluyó que el agua se le cobraba al demandante por trimestres y que el demandante no pagó bajo protesta sino los pagos que hizo en julio 3 y agosto 10, 1934. Para ello la corte dió crédito al testimonio de Antongiorgi y desechó el del demandante. Dirimió así un conflicto de evidencia en uso de sus facultades y aunque hay fuerza en el argumento del apelante en cuanto al primer extremo, esto es, al cobro por trimestres, no estamos convencidos de que la corte de distrito errara de modo manifiesto o actuara movida por pasión, prejuicio o parcialidad.

Los errores cuarto y quinto se refieren al fundamento que tuvo la corte para declarar la demanda sin lugar, a saber, la aplicación de la doctrina de "estoppel".

Nos inclinamos a creer que asiste la razón al apelante. Éste no tiene derecho a reclamar en relación con los pagos anteriores, pero el que hiciera dichos pagos sin protesta no lo obliga a seguir acatando una ordenanza que considere nula. Su derecho a levantar la cuestión de nulidad en el momento actual era claro.

Ahora bien, como esos errores lo son sólo en cuanto al fundamento que tuvo la corte para dictar su sentencia, si ésta se sostiene por otros fundamentos, no procederá su revocación. Ello nos obliga a seguir en el estudio del caso.

El motivo de nulidad que se alega es que la ordenanza no fué aprobada por la Comisión de Servicio Público. Textualmente se dice por el demandante en su alegato:

"... Fué un hecho probado en la Corte inferior que la ordenanza estableciendo la tarifa de acueducto en Yauco, del año 1924, que suplantó la tarifa de $12.00 por la de $6.00 que imponía la ordenanza de 1912 en cañerías de ¼ de pulgada, como la usada por el peticionario, no había sido aprobada por la Comisión de Servicio Público de Puerto Rico, siendo por este motivo nula en su aplicación, según se desprende del artículo 3 letra E y el artículo 24, de la ley de Servicio Público, que dicen:

" 'Artículo 3.—Será deber de toda compañía de servicio público ... no hacer cambio en ninguna tarifa o itinerario sin la aprobación previa de la Comisión.

" 'Artículo 24.— .... Ningún tipo estará en vigor hasta que fuere publicado según se dispone en la presente y aprobado por la Comisión.'

"La evidencia de lo que antes afirmamos es una certificación del Secretario de la Comisión de Servicio Público haciendo constar que dicha ordenanza de 1924 no ha sido aprobada por la Comisión de Servicio Público, ni ninguna otra ordenanza, tarifa o reglamento de acueducto del municipio de Yauco. (Exhibit E de la Exposición del caso). Si se tiene en cuenta que la Comisión de Servicio Público fué creada en 1917 por nuestra Carta Orgánica, y no existiendo hasta esta fecha ordenanza o tarifa alguna aprobada por dicha Comisión, que en forma alguna enmiende la tarifa aprobada en 1912, fácilmente podrá deducirse que la única tarifa en vigor legalmente es la del 1912.''

La dificultad para resolver la cuestión que así se plantea es que la ordenanza cuya declaración de nulidad solicita el demandante no fué por él presentada en evidencia. Y como por otra parte se admitió la validez de la primitiva ordenanza y de ésta sólo consta en la exposición del caso que fijaba "en $6 anuales el tributo a pagarse por los consumidores de agua de Yauco cuyo servicio de agua tenga una cañería de un cuarto de pulgada", y no aparece alegado ni probado cuál fuera el diámetro de la cañería conductora del agua a la casa del demandante ¿qué base existe para concluir que la cantidad que se le cobraba no lo fuera de acuerdo con la ordenanza sobre cuya validez no hay cuestión? Ninguna a nuestro juicio.

■ El sexto error se refiere a la imposibilidad en que se encontraba el municipio por no haber dado cumplimiento a lo dispuesto en el artículo sexto del Reglamento de Sanidad Núm. 14 que según la exposición del caso es como sigue:

"Cuando por falta de pago de la contribución de agua, el municipio se encuentre en la necesidad de cortar el agua en cualquier casa o edificio, dicho municipio, antes de hacerlo, presentará al Director de Sanidad una relación de los contribuyentes morosos, con especificación de sus nombres, residencias y cantidades que adeudan ...."

Declarando en el juicio el Tesorero demandado admitió que no se había cumplido con ese precepto reglamentario. ¿Convierte ello en ilegal la actuación del municipio?

La corte de distrito no considera la cuestión en su relación del caso y opinión, la parte apelante se limita a levantarla en su alegato sin razonarla debidamente y sin cita alguna de autoridades, la parte apelada nada dice en su alegato sobre el particular.

No hay duda de la sabiduría del precepto, dada la estrecha relación que existe entre el agua corriente y el problema sanitario, pero nos inclinamos a considerar la regla más bien directiva que mandatoria, no produciendo en tal virtud su inobservancia la nulidad absoluta de la actuación.

Por el séptimo y último señalamiento de error el apelante se refiere a las fechas del corte del agua—junio 23, 1934—y renovación del servicio—julio 11, 1934—como demostrativas de la actuación ilegal del Municipio.

No tiene razón. En junio 23 no sólo debía el demandante el agua que había consumido el último trimestre del año económico 1933 a 34, si que la del año entero. Se le avisó y advirtió y no pagó. La suspensión del servicio estaba autorizada por la ordenanza.

El servicio se restableció el once de julio cuando el demandante no había pagado aún el primer trimestre del año económico 1934-35. Lo hizo en agosto 10, 1934. ¿De qué puede quejarse? Se trataba de una nueva conexión. Con el

pago de julio 3 lo que hizo el demandante fué saldar su deuda del año anterior.

La sentencia se sóstiene, pues, porque de los autos no surge de modo claro y terminante que la actuación del municipio fuera ilegal, siendo quizá conveniente decir que examinada la declaración prestada por el demandánte a los efectos de demostrar que los daños y perjuicios que sufriera ascendían a la suma de cinco mil dólares, parece tan exagerada que no inclina en verdad en su favor la conciencia judicial.

*Debe declararse sin lugar la apelación y confirmarse la sentencia recurrida.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.